ROBERT L. BLAND, Judge.
In this case claimant J. W. Hartigan, M. D., of Morgan-town, West Virginia, seeks an award of $9,740.00 as hereinafter more particularly set forth.
Testifying in support of the claim Dr. Hartigan said that on the night of April 15, 1941, His Excellency, the Honorable Matthew M. Neely, Governor of West Virginia, communicated with him by telephone at his home in Morgantown and stated that he wanted him to go to McKendree, in Fayette county, to be the chief surgeon at McKendree emergency hospital; that he went to Charleston on the sixteenth of April, remaining over night in that city, and on the following morning had a conference with the Governor at his office in the Capitol, at which time he announced his willingness to go to the hospital whenever the Governor was ready to send him there. On the same day he was the luncheon guest of the Governor *276 at the Executive Mansion, where they were joined by the Honorable Walter R. Thurmond, at that time president of the board of control, which exercises supervision over certain state institutions.
Claimant further stated that at the direction of Governor Neely he was taken to the McKendree institution by Mr. Thurmond, and at once entered upon the discharge of his duties, and remained at the hospital for a period of six months, during all of which time his name appeared on the pay roll of the hospital as its superintendent, and that for his services in that capacity he was paid the sum of $2000.00, the salary of the superintendent having been fixed by the board of control at $4000.00 per annum.
Claimant admitted that after a service of six months at the hospital he was relieved from further duty there by Governor Neely. In other words he was dismissed by the Governor. This dismissal was in the form of a letter. After he received this letter, which was delivered to him at his home in Mor-gantown, by the sheriff of Monongalia county and a state trooper, he did not return to the McKendree institution or render any further service there.
The claim now prosecuted by Dr. Hartigan is itemized as follows: Personal surgical instruments lost at the hospital, $40.00; salary as chief surgeon for six months from and after April 16, 1941, $1800.00; maintenance of wife at hotel in city of Beckley, $900.00; salary as superintendent for twenty-one months from October 16, 1941, $7,000.00.
Dr. Hartigan submitted his case on his own testimony. No corroborative evidence was offered.
Mr. Thurmond, called as a witness on behalf of the board of control, testified that at the time claimant went to the Mc-Kendree hospital he was president of the board of control. He stated that on the twenty-eighth of March, 1941, he notified Governor Neely that the McKendree hospital was without a *277 superintendent. He further testified that on April 14, while he was making an official visit to the girls’ industrial home at Salem and remaining there over night the Governor of the state called him about 9:00 o’clock and said: “I have decided to appoint our mutual friend, Dr. Hartigan, to the place at McKendree.” He said that he met the Governor and Dr. Hartigan at the Executive Mansion about 12:30 o’clock on April 16, and at the direction of the Governor took claimant on that day to McKendree and installed him as superintendent of McKendree emergency hospital. They arrived at the institution about 5:30 p. m. on that day, just before dinner. Dr. Hartigan stated that the trip was made on the morning of the seventeenth. There is a discrepancy in the two statements. Mr. Thurmond said that he testified with reference to the record of the board of control.
Governor Neely, also called as a witness on behalf of respondent, testified: “I am certain of what I asked him to go for. The capacity in which I asked him to go there was that of superintendent. I had no authority, so far as I know, to appoint him chief surgeon there or in any other hospital in the state.” And he stated that his recollection was that when he offered the position to Dr. Hartigan he informed him that the superintendent’s salary was $4,000.00 a year.
Mr. Thurmond, while a member of the board of control, acquired particular knowledge of and familiarized himself with the different institutions of the state. He testified that the principal surgical institutions were the three miners’ hospitals, one located at Welch, one at McKendree, and one at Fairmont, and that in each one of them the man who was superintendent did practically all of the surgery and a tremendous amount of it. He said that no superintendent was paid additional compensation as a surgeon. He further testified that there was no one at these institutions designated as chief surgeon.
We think that it is clearly shown by the evidence that Dr. Hartigan was appointed superintendent of McKendree emergency hospital, and that he was never at any time designated *278 as chief surgeon of that institution. What work he did as surgeon there was incidental to-his duties as superintendent.
We have already stated that Dr. Hartigan remained at the hospital for a period of six months in .the capacity of superintendent and that for his services he was paid $2000.00. But in his present claim he asks for $40.00 to compensate him for certain surgical instruments belonging to him and taken to the hospital when he went there but which were misplaced or lost. Concerning them claimant testified: “I couldn’t find these when I went after them.” When he took the instruments to the hospital they were in his custody and under his control. An award will not be made for the value of surgical instruments belonging to the superintendent of a state emergency hospital, misplaced or lost at a .time when such superintendent was responsible for the security and safekeeping of such instruments.
The claim for salary as chief surgeon for six months from and after April 16, 1941, amounting to $1800.00 cannot be sustained. As disclosed by the evidence Dr. Hartigan was not employed or engaged as chief surgeon and there was no position or office at the institution designated or known as chief surgeon. Claimant was paid as superintendent for that period the sum of $2,000.00. Nor can we perceive any basis for an award for maintenance of claimant’s wife at a hotel in the city of Beckley in the sum of $900.00. Claimant himself testified that she was not at a hotel in Beckley during the six months period of his incumbency as superintendent of the hospital. Mr. Thurmond testified that there was no agreement that Mrs. Hartigan’s maintenance at such hotel would be paid by the board of control. He told claimant that the living quarters at the hospital (where Mrs. Hartigan could have remained if she wished to do so) were not particularly commodious and expressed doubt whether Mrs. Hartigan would be satisfied there. Claimant replied that it was not his intention to have his wife with him during the time that he remained at the institution. During the entire period of claimant’s stay at the *279 McKendree emergency hospital she remained at her home in Morgantown.
Dr. Hartigan’s claim for salary as superintendent of the hospital for twenty-one months from October 16, 1941, in the sum of $7,000.00, is without merit. During that period he rendered no service to the institution. He was not there. His tenure as superintendent had been terminated by the Governor. He served in the capacity of superintendent for six months from April 16, 1941, and his salary of $2,000.00 was paid to him. At the end of that period he was removed as superintendent by the Governor. He served during the will and pleasure of the Governor. No commission had been given him. The Governor had the lawful right to remove him at any time. Chapter 6, article 6, section 4, of the code of West Virginia, provides as follows:
“Any person who has been, or may hereafter be appointed by the governor to any office or position of trust under the laws of this State, whether his tenure of office is fixed by law or not, may be removed by the governor at his will and pleasure. In removing such officer, appointee, or employee, it shall not be necessary for the governor to assign any cause for such removal.”
The burden of proof to establish the correctness and merit of his claim rested upon Dr. Hartigan. He has not met that burden. A claimant must prove his claim by a preponderance or greater weight of the evidence, and no award can be made in the absence of such proof.
We are of opinion that no award in this case can properly be allowed.
An award is, therefore, denied and the claim dismissed.